**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MATTEL, INC.,

      Plaintiff,

v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

      Defendants.

Case No. 26-cv-03888

**COMPLAINT**

Plaintiff Mattel, Inc. ("Mattel" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and have sold products using infringing and counterfeit versions of Mattel's federally registered trademarks and/or unauthorized copies of the federally registered Monster High copyrighted works (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Mattel substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Mattel to combat e-commerce store operators who trade upon Mattel's reputation and goodwill by offering for sale and selling Unauthorized Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their infringing operation. Mattel is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of the registered Monster High copyrighted works, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Mattel has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement of the registered Monster High copyrighted works as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.     Mattel, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 333 Continental Boulevard, El Segundo, CA 90245.

5.     Mattel, through its family of companies, is a leading designer, developer, marketer, manufacturer and distributor of well-known children's toys and games under its iconic brands, including, but not limited to: Monster High, Barbie, UNO, Hot Wheels, American Girl, Fisher-Price, and Thomas & Friends.

6.     Mattel sells its products worldwide through major retailers, quality toy stores and online marketplaces, including, but not limited to: Wal-Mart, Target, Amazon, and many others.

7.     Monster High is a multimedia toy and entertainment based franchise designed and created by Mattel in 2010. The Monster High brand has since expanded to a vast range of commercial products and entertainment, including, but not limited to, doll accessories, playhouses, toy cars and other toy vehicles, books, movies, games, puzzles, clothing, beverages, candy, food, and more (collectively, the "Monster High Products").

8.     Since 2010, the Monster High franchise has expanded to include 7 television seasons, 15 animated movies, 2 live action films, more than 10 video games, interactive websites and mobile applications.  Monster High has been recognized with numerous awards and nominations, including the Children's & Family Emmy Awards, the Leo Awards, and the Kidscreen Awards.  Some of the characters and character names made famous by Monster High include:

3

| Character | Image | Character | Image |
|-----------|-------|-----------|-------|
| Frankie Stein | | Spectra Vondergeist | |
| Clawdeen Wolf | | Venus McFlytrap | |
| Cleo de Nile | | Nefera de Nile | |

| Draculaura | | Abbey Bominable | |
|---|---|---|---|
| Lagoona Blue | | Deuce Gorgon | |
| Ghoulia Yelps | | Twyla Boogeyman | |

9.     In 2010, concurrent with the launch of the television series, the Monster High fashion doll line was introduced and became an immediate sensation that sold out in stores worldwide. By 2013, Monster High was the second best-selling doll brand in the world. Total annual sales under the Monster High brand are more than a $500 million dollars, with much of that revenue stemming from sales of Monster High Products other than toys.

10.     The Monster High brand has become a global success that resonates with children worldwide, and Monster High Products are among the most recognizable in the world.  Among the purchasing public, genuine Monster High Products are instantly recognizable as such.

11.     Long before Defendants' acts described herein, Mattel launched the Monster High television show and fashion dolls bearing its now famous MONSTER HIGH marks and Monster High copyrighted works.

12.     Mattel has continuously sold products under the MONSTER HIGH trademark and other trademarks (collectively, the "MONSTER HIGH Trademarks"). As a result of this long-standing use by Mattel, strong common law trademark rights and goodwill have amassed in the MONSTER HIGH Trademarks. The MONSTER HIGH Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark |
|---|---|
| 4,523,454; 4,298,505; 4,196,052; 7,538,441; 7,409,736; 7,189,409; 3,932,599; 7,622,643; 7,189,658; 4,026,560; 3,828,721; 7,189,659; 4,250,454 | MONSTER HIGH |
| 3,877,854 | MONSTER HIGH (logo) |
| 7,237,918 | ABBEY BOMINABLE |
| 3,922,002; 6,804,801 | CLAWDEEN WOLF |
| 7,049,542 | CLEO DE NILE |
| 7,049,543 | DEUCE GORGON |

| | |
|---|---|
| 3,803,936; 3,895,421 | DRACULAURA |
| 7,700,916 | FANGTASTIC |
| 6,783,249 | FRANKIE STEIN |
| 7,026,834 | GHOULIA YELPS |
| 6,822,015 | LAGOONA BLUE |
| 7,582,055 | MONSTER FEST |
| 7,780,252 | NEFERA DE NILE |
| 5,470,544 | NEPTUNA |
| 4,542,276 | TWYLA |
| 7,524,310 | SPECTRA VONDERGEIST |
| 7,628,024 | VENUS MCFLYTRAP |
| 7,995,255; 7,755,114; 5,177,215; 5,177,218 | |

13. The above U.S. registrations for the MONSTER HIGH Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the MONSTER HIGH Trademarks constitute *prima facie* evidence of their validity and of Mattel's exclusive right to use the MONSTER HIGH Trademarks pursuant to 15 U.S.C. § 1057(b). Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the MONSTER HIGH Trademarks are conclusive evidence of the validity of Mattel's MONSTER HIGH Trademarks and of the registrations of the MONSTER HIGH Trademarks, of Mattel's ownership of the MONSTER HIGH Trademarks, and of Mattel's exclusive right to use the MONSTER HIGH Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. True and correct copies

7

of the United States Registration Certificates for the above-listed MONSTER HIGH Trademarks are attached hereto as **Exhibit 1**.

14. The MONSTER HIGH Trademarks are distinctive when applied to Monster High Products, signifying to the purchaser that the products come from Mattel and are manufactured to Mattel's quality standards. Mattel ensures that products bearing the MONSTER HIGH Trademarks are manufactured to the highest quality standards.

15. The MONSTER HIGH Trademarks are famous marks as that term is used in 15 U.S.C. § 1125(c)(1). The innovative marketing and product designs of Monster High Products have enabled the Monster High brand to achieve widespread recognition and fame. The widespread fame, outstanding reputation, and significant goodwill associated with the Monster High brand have made the MONSTER HIGH Trademarks valuable assets of Mattel.

16. Mattel is among a limited number of companies that not only develop and produce global entertainment properties, characters, and content, but also monetize that content through the creation, sale, and licensing of products. Mattel has expended substantial time, money, and other resources in advertising and promoting the MONSTER HIGH Trademarks. In fact, Mattel has expended millions of dollars in advertising, promoting, and marketing featuring the MONSTER HIGH Trademarks. Monster High Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the MONSTER HIGH Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Mattel. Monster High Products have become among the most popular of their kind in the U.S. and the world. The MONSTER HIGH Trademarks have achieved tremendous fame and recognition which has only

8

added to the distinctiveness of the marks. As such, the goodwill associated with the MONSTER HIGH Trademarks is of incalculable and inestimable value to Mattel.

17.     Monster High Products are distributed and sold to consumers through authorized retail channels throughout the United States, including through authorized retailers in Illinois.

18.     Mattel has also registered hundreds of the Monster High brand works with the U.S. Copyright Office (the "Monster High Copyrighted Works"), including, but not limited to, the following:

- "Welcome to Monster High; The Origin Story" (U.S. Copyright Registration No. PA 2-062-653), issued by the Register of Copyrights on October 20, 2016;

- Monster High: Fright On!" (U.S. Copyright Registration No. PA 1-803-677), issued by the Register of Copyrights on November 21, 2011;

- "Monster High: Why Do Ghouls Fall in Love" (U.S. Copyright Registration No. PA 1-808-292), issued by the Register of Copyrights on February 23, 2012;

- "Monster High: Escape from Skull Shores" (U.S. Copyright Registration No. PA 1-792-520), issued by the Register of Copyrights on April 25, 2012;

- "Monster High 13 Wishes" (U.S. Copyright Registration No. PA 1-871-472), issued by the Register of Copyrights on October 21, 2013;

- "Monster High 1 - #106 Fear Squad" (U.S. Copyright Registration No. PAu 3-693-974), issued by the Register of Copyrights on October 1, 2013;

- "Monster High 1 - #114 Jaundice Brothers" (U.S. Copyright Registration No. PAu 3-694-025), issued by the Register of Copyrights on October 1, 2013;

- "Monster High 1 - #108, Party Planners" (U.S. Copyright Registration No. PAu 3-693-966), issued by the Register of Copyrights October 1, 2013; and

- "Monster High 16 - #663 We Are Monster High" (U.S. Copyright Registration No. PAu 3-718-441), issued by the Register of Copyrights on April 16, 2014.

True and correct copies of the U.S. federal copyright registration certificates for the above-referenced Monster High Copyrighted Works are attached hereto as **Exhibit 2**.

19. Among the exclusive rights granted to Mattel under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Monster High Copyrighted Works to the public.

20. Since their first publication, the Monster High Copyrighted Works have been used on the Monster High Products.

**The Defendants**

21. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Mattel. On information and belief, Defendants reside and/or operate in the People's Republic of China or in other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

22. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their infringing operation make it virtually impossible for Mattel to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Mattel will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

23. The success of the Monster High brand has resulted in significant infringement of the MONSTER HIGH Trademarks and copying of the Monster High Copyrighted Works. Consequently, Mattel has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.

In recent years, Mattel has identified many fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

24.    Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms

---

[2] Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[5] "Combating Trafficking in Counterfeit and Pirated Goods," *supra* note 4, at 22.

[6] *Id.* at 39.

create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

25.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and have sold Unauthorized Products to residents of Illinois.  Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 3**.

26.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores (including product detail pages) operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Mattel has not licensed or authorized Defendants to use any of the MONSTER HIGH Trademarks and/or copy or distribute the Monster High Copyrighted Works, and none of the Defendants are authorized retailers of Monster High Products.

27.     Many Defendants also deceive unknowing consumers by using the MONSTER HIGH Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Monster High Products. Other e-commerce stores operating under the Seller Aliases omit using the MONSTER HIGH Trademarks in the item title to evade

---

[7] Chow, *supra* note 4, at 186-87.

enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Monster High Products.

28. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

29. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringement operation, and to avoid being shut down.

30. Defendants are collectively causing harm to Mattel's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Mattel in a way that individual actions, occurring alone, might not.

31. E-commerce store operators like Defendants communicate with each other on chat rooms and through websites regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

32. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Mattel's enforcement. E-

commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Mattel. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

33.    Upon information and belief, Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Mattel, have knowingly and willfully used and continue to use the MONSTER HIGH Trademarks and/or copies of the Monster High Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

34.    Defendants' unauthorized use of the MONSTER HIGH Trademarks and/or copies of the Monster High Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Mattel.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

35.    Mattel hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered MONSTER

14

HIGH Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MONSTER HIGH Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Monster High Products offered, sold, or marketed under the MONSTER HIGH Trademarks.

37. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the MONSTER HIGH Trademarks without Mattel's permission.

38. Mattel is the exclusive owner of the MONSTER HIGH Trademarks. Mattel's United States Registrations for the MONSTER HIGH Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Mattel's rights in the MONSTER HIGH Trademarks and are willfully infringing and intentionally using counterfeit versions of the MONSTER HIGH Trademarks. Defendants' willful, intentional, and unauthorized use of the MONSTER HIGH Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

39. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40. Mattel has no adequate remedy at law and, if Defendants' actions are not enjoined, Mattel will continue to suffer irreparable harm to its reputation and the goodwill of the MONSTER HIGH Trademarks.

41. The injuries and damages sustained by Mattel have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

42. Mattel hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

43. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Mattel or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Mattel.

44. By using the MONSTER HIGH Trademarks in connection with the Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

45. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

46. Mattel has no adequate remedy at law and, if Defendants' actions are not enjoined, Mattel will continue to suffer irreparable harm to its reputation and the goodwill of the Monster High brand.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATION
(17 U.S.C. §§ 106 AND 501)

47. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

48. The Monster High Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

16

49. Plaintiff is the owner of the Monster High Copyrighted Works. Mattel has complied with the registration requirements of 17 U.S.C. § 411(a) for the Monster High Copyrighted Works. The Monster High Copyrighted Works are protected by Copyright Registration Nos. PA 2-062-653, PA 1-803-677, PA 1-808-292, PA 1-792-520, PA 1-871-472, PAu 3-693-974, PAu 3-694-025, PAu 3-693-966 and PAu 3-718-441 which were duly issued to Mattel by the United States Copyright Office. At all relevant times, Mattel has been and still is the owner of all rights, title, and interest in the Monster High Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

50. The Monster High Copyrighted Works are published on the Internet and available to Defendants online. As such, Defendants had access to the Monster High Copyrighted Works via the Internet.

51. Without authorization from Mattel, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivate works incorporating the Monster High Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Monster High Copyrighted Works. Such conduct infringes and continues to infringe the Monster High Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

52. Defendants reap the benefits of the unauthorized copying and distribution of the Monster High Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

53.     Defendants have unlawfully appropriated Mattel's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Monster High Copyrighted Works.

54.     On information and belief, the Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

55.     The Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

56.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Monster High Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Mattel prays for judgment against Defendants as follows:

1)  That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  using the MONSTER HIGH Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Monster High Product or is not authorized by Mattel to be sold in connection with the MONSTER HIGH Trademarks;

18

b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Monster High Copyrighted Works in any manner without the express authorization of Plaintiff;

c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Monster High Product or any other product produced by Mattel, that is not Mattel's or not produced under the authorization, control, or supervision of Mattel and approved by Mattel for sale under the MONSTER HIGH Trademarks and/or the Monster High Copyrighted Works;

d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Mattel, or are sponsored by, approved by, or otherwise connected with Mattel;

e. further infringing the MONSTER HIGH Trademarks and/or the Monster High Copyrighted Works and damaging Mattel's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Mattel, nor authorized by Mattel to be sold or offered for sale, and which bear any of Mattel's trademarks, including the MONSTER HIGH Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Monster High Copyrighted Works;

2) Entry of an Order that, upon Mattel's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal, Amazon, eBay, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit

19

and infringing goods using the MONSTER HIGH Trademarks and/or which bear the Monster High Copyrighted Works;

3) That Defendants account for and pay to Mattel all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the MONSTER HIGH Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Mattel be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the MONSTER HIGH Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Monster High Copyrighted Works, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c)

7) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

20

Dated this 8th day of April 2026.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Hannah A. Abes
Greer, Burns & Crain, Ltd.
200 W. Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
habes@gbc.law

*Counsel for Plaintiff Mattel, Inc.*

21